12 CIV 4019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JAMES LOPRESTI                                    :
                                                  :   Civil Action No.
                                                  :
                        PLAINTIFF,                :   **COMPLAINT**
        v.                                        :
                                                  :   Plaintiff Demands
                                                  :   a Trial by Jury
CARRIER CORP.                                     :
                                                  :
                                                  :
                        DEFENDANT.                :
-----------------------------------------------------------------x

       Plaintiff JAMES LOPRESTI by his attorneys, LEVINE & BLIT, PLLC, complaining of defendant CARRIER CORPORATION respectfully alleges upon information and belief:

## NATURE OF THE ACTION

1.   This is an action arising under Section 806 of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("Sarbanes-Oxley").

2.   Plaintiff James LoPresti alleges that defendant terminated his employment and otherwise retaliated against him because he engaged in activity that is protected under Sarbanes-Oxley.

## JURISDICTION

3.   Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1514A(b)(1)(B).

4.   Plaintiff timely filed a complaint against defendant with the United States Department of Labor, Occupational Health and Safety Administration ("OSHA") (Case No. 2-4173-10-116) on August 24, 2010, within 90 days after plaintiff was advised by defendant of the termination of his employment.

5.   More than 180 days have passed since plaintiff filed his complaint with OSHA, and

1

OSHA has not issued a final decision within the meaning of 18 U.S.C. § 1514A(b)(1)(B), and there is no showing that such delay is due to the bad faith of plaintiff.

## VENUE

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to plaintiff's claim occurred in this District.

## PARTIES

7.  Plaintiff ("Mr. Lopresti" or "plaintiff") is a resident of the State of New York, residing at 1744 Auburn Road, Wantagh, New York 11793.

8.  Defendant Carrier Corp. ("Carrier" or "defendant") is the world's largest provider of HVAC and refrigeration solutions, including controls for residential and transportation applications. Carrier is a wholly owned subsidiary of United Technologies Corporation ("United"), which is a fortune forty (40) publicly traded company of the United States Stock Exchange (Symbol UTX). Carrier has gross sales in excess of $13 billion and engages over 45,000 employees worldwide. Carrier is headquartered at One Carrier Place, Farmington, CT 06034-4015. Carrier has an office in New York at 450 west 33rd Street, #1L, New York 10001 and an office at 175 Central Avenue, Farmingdale, New York 11735.

9.  Plaintiff was employed by defendant for approximately sixteen (16) years before being terminated on June 23, 2010. Plaintiff was employed in executive management positions for ten (10) years. At the time of his termination, plaintiff was employed as Area General Manager for Long Island, New York City and lower upstate New York, overseeing more than one-hundred (100) employees.

## FACTUAL ALLEGATIONS

**Mr. LoPresti's Protected Activity – Accounting Irregularities**

10. Mr. LoPresti was employed by Carrier for approximately sixteen (16) years. Mr. LoPresti commenced his employment with Carrier in 1987 as a field technician. Plaintiff was

2

employed by defendant until 1992 and then was rehired by defendant in 1999 and worked continuously for Carrier until his termination on June 23, 2010.

11. In or about January, 2008, Mr. LoPresti was promoted to Area General Manager covering Long Island, New York City and lower upstate New York. Mr. LoPresti's responsibilities as Area General Manager included overseeing four Territory Branches, including sales, operations, Environmental Health and Safety and profits and losses for $50 million of Carrier's business. Mr. LoPresti replaced his former boss, Timothy Murphy ("Mr. Murphy") who was promoted to Regional Manager after holding the position for ten (10) years.

12. In or about 2009, Mr. LoPresti became aware of potential fraud in the way that his Area was reporting financial information to Carrier's parent company, United, and Mr. LoPresti reported his concern numerous times to Mr. Murphy.

13. Mr. LoPresti was concerned that there was nearly $400,000 in "trailing costs" sitting on Carrier's books that Carrier had failed to accrue and instead had been falsely reported as profit to United. (Trailing costs are expenses incurred by Carrier in servicing its customers but which were not then accrued or allocated to specific services, thus increasing Carriers' profits.)

14. The majority of the trailing costs were incurred prior to plaintiff's promotion to Area Manager dating back to as late as 2007. Mr. LoPresti suspected that trailing costs were not unique to his area and instead reflected a more widespread fraudulent practice by Carrier.

15. Mr. LoPresti was concerned that these trailing costs were so old that it was improper for him to ignore them and it was the Finance Department's responsibility to "write them off." However, each time he would bring this concern to the attention of his supervisors, he was told to "realize" them only when he could "afford" to.

16. Mr. Murphy ignored plaintiff's concerns and instead ordered Mr. LoPresti and other managers to recognize expenses only after their targets (known as "go-gets") set by Carrier, were realized, making it impossible to ever realize trailing costs. Go-gets are Carrier's add-ons to managers' monthly and quarterly sales forecasts that could be as much as 60% higher than actual forecasts.

3

17. In or about March 2009, plaintiff heard the National Finance Manager, Richard Hearn say to his boss during a telephone conference with Mr. Murphy, "you bloody well make the go-get". There were no meetings held to discuss whether these go-gets were realistic but instead were handed down to managers, like Mr. LoPresti.

18. Mr. Murphy and the Regional Finance Director, Yale Curtis ("Mr. Curtis") would ask plaintiff, who would have to ask his staff managers, for sales forecasts that would be sent up the chain of command. When Mr. LoPresti would submit realistic sales forecasts, they would be "adjusted" by upper management.

19. On or about November 20, 2008, shortly after plaintiff's promotion to Area Manager, plaintiff notified Mr. Curtis that he did not have the sales to back up the go-gets and suggested that Mr. Curtis meet with his sales team to justify his numbers. Mr. Curtis ignored Mr. LoPresti's suggestion and continued to pressure Mr. LoPresti to obtain unrealistic go-gets.

20. Despite the fact that 2009 was a very bad year for the economy, upper management continued to demand go-gets each quarter without any appropriate consultation with plaintiff or with his sales team and thus without any justification of the numbers subsequently reported.

21. On or about August 19, 2009, it became clear to Mr. LoPresti that his area could not sustain Mr. Curtis' inflated numbers. Plaintiff reported this to Mr. Curtis in a series of emails in which Mr. Curtis asserted that "the region could not afford this miss." Plaintiff continued to inform the finance team that he did not have the revenue to back up their go-get numbers; however, the numbers were never adjusted.

22. Finally, at a meeting on or about September 15, 2009, Mr. LoPresti presented the non-accrual of trailing costs on a Powerpoint presentation as a problem for the business. Mr. Curtis, Mr. Murphy, Regional Financial Manager Seth Grossman ("Mr. Grossman"), other Area Managers and an Ethics Officer, Lynn Moth ("Ms. Moth") were present at this presentation. Plaintiff had emailed the presentation to Mr. Curtis prior to this meeting. However, during the presentation the room went silent when plaintiff presented the trailing costs issue and Mr. Murphy requested plaintiff to move on to another part of the presentation.

**Retaliation Against Mr. LoPresti in Response to His Protected Activity**

23. On or about March 30, 2010, plaintiff was requested to travel to Syracuse, New York to meet with Carrier's ethics investigators. At this meeting, Mr. LoPresti was interrogated about everything from receipts for a laptop bag, to bringing a vendor to an industry event, to a snowmobile trip with clients that had been customary and preapproved by all levels of upper management. He was also questioned about "holding accounts."

24. During this investigation, plaintiff repeatedly informed the investigators, Regional Business Practice Officers, Greg Riffle ("Mr. Riffle") and Ms. Moth, and Carrier's Controller, Donna Bradley ("Ms. Bradley") of his concerns regarding non-accrued trailing costs. Mr. LoPresti questioned the investigators as to why management was so concerned about the holding accounts, which plaintiff believed he was being targeted and blamed for, when trailing costs were a much more serious financial issue.

25. At this point Mr. Riffle should have reported these trailing costs as a potential Sarbanes-Oxley violation and handled the issue in accordance with United's policies. Instead, Mr. Riffle ignored the issue without asking Mr. LoPresti any further questions about his concerns. Furthermore, instead of keeping this discussion confidential, Mr. Riffle shared it with Mr. LoPresti's supervisors, Mr. Murphy and Mr. Curtis, both of whom shared financial responsibility for the region and were aware of and responsible for the trailing costs issues.

26. Shortly after Mr. LoPresti's discussions in Syracuse, the Finance Department abruptly closed all the trailing costs, something plaintiff was trying to do for two years but was prohibited from doing so.

27. On or about May 27, 2010, plaintiff was again asked to meet with Mr. Riffle in Syracuse. At this meeting, Mr. Riffle accused Mr. LoPresti of harassing and retaliating against one of his employees, Frank Bonelli because of Mr. LoPresti's alleged knowledge or suspicion that Mr. Bonelli had lodged a complaint against him in February, 2010. There was no evidence to support Mr. Riffle's accusations; Mr. LoPresti had never taken any adverse employment

5

action against Mr. Bonelli. Mr. Riffle's accusations were a smokescreen to justify further retaliation against plaintiff for reporting Carrier's financial improprieties.

28. Mr. Riffle subsequently confiscated Mr. LoPresti's work cell phone and credit cards and informed him that he was being suspended with pay because there was no conclusive evidence. Carrier subsequently changed the locks at the front entrance and did not inform Mr. LoPresti's staff why he was not in the office. Mr. LoPresti's employees began to spread rumors to other employees, customers and vendors that he had been fired for stealing and "cooking the books." Management condoned these rumors and in doing so permanently ruined plaintiff's good reputation in the industry that he had built for the past twenty-five (25) years.

29. On or about May 28, 2010, Mr. LoPresti sent a letter to Carrier's President, Erv Lauterbach ("Mr. Lauterbach") and telephoned him regarding the investigation against plaintiff, including his reporting of financial improprieties to Mr. Riffle and stating that he had sent Mr. Riffle evidence of the improprieties.

30. On or about June 23, 2010, plaintiff was informed that he was being terminated from his employment with Carrier. Mr. LoPresti immediately contacted Mr. Lauterbach and reported the entire matter to him, including plaintiff's suspicions that Mr. Murphy had covered up the matter and again emphasized the potential Sarbanes-Oxley violations that he had witnessed. Mr. Lauterbach agreed to meet with Mr. LoPresti but later cancelled.

31. Mr. LoPresti was later informed by Dina Morales ("Ms. Morales"), Mr. Riffle's manager that the ethics committee at United had reviewed the investigation into Mr. LoPresti's conduct and found no wrongdoing by plaintiff. However, Ms. Morales informed plaintiff that United had referred the matter back to local management for disposition and local management had taken its desired action.

32. On or about August 24, 2010, Mr. LoPresti filed a formal Whistleblower Complaint with OSHA along with supporting documents.

33. Carrier submitted a rebuttal to plaintiff's OSHA complaint on or about October 1, 2010.

34. On or about March 3, 2011, Mr. LoPresti filed documents with OSHA supplementing his original complaint.

35. OSHA has not issued a final determination in the matter and plaintiff now seeks this Court's de novo review.

36. Subsequent to Mr. LoPresti's termination, many members of the management team whom plaintiff reported the non-accrual of trailing costs and who were instrumental in terminating plaintiff's employment, have been either demoted or terminated. For example, Mr. Murphy has been demoted from Regional Manager to a sales position lacking managerial responsibility. Mr. Grossman was terminated shortly after Mr. LoPresti's termination and his boss, Mr. Curtis, has resigned. Additionally, Carrier's President, Mr. Lauterbach, is no longer employed at Carrier.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Retaliation in Violation of Sec. 206 of Sarbanes-Oxley 18 U.S.C. § 1514A)

37. Plaintiff hereby repeats and realleges each and every allegation as contained in paragraphs 1 – 36 as though fully set forth herein.

38. Defendant is a subsidiary of a company that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 780(d)) within the meaning of 18 U.S.C. § 1514A.

39. Plaintiff is an employee of defendant within the meaning of 18 U.S.C. § 1514A.

40. The information plaintiff provided to Carrier's upper management (detailed above) regarded conduct that Mr. LoPresti reasonably believed constituted violations of rules or regulations of Sarbanes-Oxley.

41. Carrier's management to whom Mr. LoPresti provided such information (detailed above) each had supervisory authority over Mr. LoPresti and/or authority to investigate, discover or terminate misconduct.

42. In providing this information to Carrier's management, Mr. LoPresti engaged in protected conduct and Carrier's management had knowledge of Mr. LoPresti's protected activity.

43. As a result of Mr. LoPresti engaging in protected activity, Mr. LoPresti suffered an unfavorable employment action when he was suspended and ultimately fired.

44. The circumstances surrounding plaintiff's termination (detailed above) sufficiently suggest that Mr. LoPresti's protected activity was a contributing factor in defendant's decision to terminate plaintiff's employment.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court enter an order:

(a) Declaring the acts and practices complained of herein are in violation of Sec. 206 of Sarbanes-Oxley 18 U.S.C. § 1514A;

(b) Pursuant to 18 U.S.C. § 1514A(c), awarding plaintiff all relief necessary to make plaintiff whole, including reinstatement to his position with seniority, back pay with interest, the value of all lost employment benefits, and front pay;

(c) Pursuant to 18 U.S.C. § 1514A(c), awarding plaintiff special damages, including litigation costs, expert witness fees, reasonable attorneys' fees, and damages for injury to reputation and emotional distress; and

(d) Such other and further relief as this Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

8

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
May 16, 2012

                                      Respectfully Submitted,

                                      **LEVINE & BLIT, PLLC**

                                      By: RUSSELL S MORIARTY, ESQ.

                                      *Attorneys for Plaintiff, James LoPresti*
                                      Empire State Building
                                      350 Fifth Avenue, Suite 3601
                                      New York, NY 10118
                                      Phone: (212) 967-3000
                                      Fax:   (212) 967-3010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JAMES LOPRESTI,                                          :      Civil Action No.:
                                                         :
                            Plaintiff,                   :
                                                         :
-against-                                                :
                                                         :
CARRIER CORP.                                            :
                                                         :
                                                         :
                            Defendant.                   :
---------------------------------------------------------X

# SUMMONS AND COMPLAINT

**LEVINE & BLIT, PLLC**
*Attorney(s) for Plaintiff*
JAMES LOPRESTI
350 Fifth Avenue - Suite 3601
New York, New York 10118
Tel: (212) 967-3000
Fax: (212) 967-3010

To:

CARRIER CORP.
450 W. 33RD ST., 1L
NEW YORK, NY 10001